## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ***In re Intellihartx Data Security Incident Litigation*** | Case No. 3:23-cv-1224 |
| | **CLASS ACTION** |

### CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Lauren Perrone, Victoria Evans, Thomas Kelly, Jose Cabrales, Nicholas Timmons, Kristi McDavitt, Robert Terwilliger, and Edwin Rodriguez, on behalf of themselves and all others similarly situated (collectively "Plaintiffs,") bring this Consolidated Amended Class Action Complaint against Defendant Intellihartx, LLC ("ITx" or "Defendant"). These following allegations are based on Plaintiffs' personal knowledge with respect to themselves and their own acts and following their investigation and the investigation of their counsel, and upon information and belief as to all other matters.

## I.      INTRODUCTION

1.      Plaintiffs bring this class action against Defendant for its failure to implement reasonable industry standard data security and properly secure and safeguard their and other similarly situated individuals' (defined herein as "Class Members") personally identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information"), including names, addresses, medical billing and insurance information, certain medical information such as diagnoses and medication, and demographic information such as dates of birth and Social Security numbers, from unauthorized disclosure to cybercriminals.

2.      Defendant ITx is a healthcare revenue cycle company located in Findlay, Ohio, that maintains the Private Information of patients of its clients, including Plaintiffs' healthcare providers, Life Laboratories, SoutheastHealth, and CoxHealth.

3.      Fortra is a cybersecurity company that provides the "GoAnywhere MFT" application, which is used as a file transfer platform.

4.      ITx transferred Plaintiffs' and Class Members' Private Information using Fortra's GoAnywhere MFT application.

5.      On or about January 30, 2023, or earlier, an unauthorized third party or person accessed and downloaded Plaintiffs' and Class Members' Private Information. Defendant has independent, non-delegable duties to healthcare clients and patients to safeguard their Private Information and is responsible for the wrongful disclosure of Plaintiffs' and Class Members' Private Information.

6.      On February 1, 2023, cybersecurity expert Brian Krebs reported that Fortra disclosed to its customers, including ITx, a "remote code injection exploit" affecting GoAnywhere MFT. Hackers used "remote code injection exploits" to remotely execute malicious code on their targets' computer systems.

7.      On or around February 10, 2023, the Russia-linked ransomware group CL0P claimed responsibility for the attacks on GoAnywhere MFT, and further claimed to have stolen data exposed by the software from over 130 organizations over the course of the preceding ten days, including ITx.

8.      On February 22, 2023, the U.S. Department of Health and Human Services' ("HHS") Health Sector Cybersecurity Coordination Center issued a "Sector Alert" emphasizing that Cl0P's claim referenced its ability to target health care systems.

9.      Despite that ITx became aware of the Data Breach by February 2, 2023, at the latest, it failed to notify Plaintiffs and the Class Members within 60 days as required by law. Notably, Defendant failed to notify Plaintiffs and Class Members of the Data Breach for more than four months from its discovery of the same. ITx's Notice was untimely and woefully deficient, failing to provide basic details concerning the Data Breach, including, but not limited to, how unauthorized parties accessed the computer server, whether the information was encrypted or otherwise protected, how and when ITx learned of the Data Breach, whether the breach was a system-wide breach, whether servers storing information were accessed, and how many people were affected by the Data Breach.

10.      On June 6, 2023, and June 9, 2023, in Notice of Security Incident letters[1] (the "Notice") sent to Plaintiffs and Class Members, Defendant confirmed that the Private Information of certain of its healthcare clients' patients, including that of Plaintiffs, were exposed by Fortra's attacker (the "Data Breach"). It is estimated that almost half a million individuals whose Private Information was in the possession and care of ITx were impacted by the Data Breach.[2]

11.      Upon information and belief, ITx knew of the vulnerability in its internal file transfer system on or before January 29, 2023.[3] As such, Defendant could have prevented the Data Breach. However, Fortra had to inform ITx of the Data Breach (despite Defendant's knowledge of the vulnerability) after the compromise and exfiltration of Plaintiffs' and Class Members' Private Information had already occurred.

12.      ITx also could have prevented this theft had it limited the patient information it shared with its business associates and employed reasonable supervisory measures to ensure that

---

[1] See Exhibit 1 (Notice to Plaintiff Terwilliger dated June 6, 2023) and Exhibit 2 (Notice to Plaintiff Rodriguez dated June 9, 2023).
[2] See  https://www.prnewswire.com/news-releases/nearly-a-half-million-social-security-numbers-leaked-following-data-breach-at-intellihartx-llc-301848518.html (last visited on October 25, 2023).
[3] See https://www.techtarget.com/searchsecurity/news/365553543/Fortra-completes-GoAnywhere-MFT-investigation (last visited on October 25, 2023).

adequate data security practices, procedures, and protocols were being implemented and maintained by said business associates in order to secure and protect its client's patients' data.

13.     ITx failed to comply with industry standards to protect patients' Private Information and failed to provide adequate notice to Plaintiffs and other Class Members that their Private Information had been compromised. Plaintiffs seek, among other things, orders requiring ITx to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the Data Breach in the future.

14.     Plaintiffs and Class Members would not have allowed their Private Information to be entrusted to ITx if they had known ITx would breach its promises and agreements by (a) failing to ensure that its vendors used adequate security measures, and/or (b) providing patients' Private Information to business associates that utilized inadequate security measures.

15.     Armed with the Private Information accessed in the Data Breach, data thieves can and will commit a variety of crimes against Plaintiffs and Class Members, including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

16.     There has been no assurance offered by ITx that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

17.     As their Private Information was taken and is now in the hands of cyber criminals, Plaintiffs and Class Members have suffered and are at a present and continuing increased risk of

suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, including out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

18.     Plaintiffs bring this class action lawsuit to address ITx's inadequate safeguarding and supervision of Class Members' Private Information that it collected and maintained. The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

19.     Upon information and belief, ITx and its employees failed to properly monitor the computer network and systems that housed the Private Information. Had ITx properly monitored its networks and provided adequate supervision over its agents, vendors, and/or suppliers, it would have discovered the system vulnerability at issue sooner and prevented the Data Breach.

20.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## II.     PARTIES

21.     Plaintiff Lauren Perrone is, and at all times mentioned herein was, a natural person and citizen of the state of New Jersey.

22.     Plaintiff Victoria Evans is, and at all times mentioned herein was, a natural person and citizen of the state of Missouri.

23.     Plaintiff Thomas Kelly is, and at all times mentioned herein was, a natural person and citizen of the state of Ohio.

24.     Plaintiff Jose Cabrales is, and at all times mentioned herein was, a natural person and citizen of the state of Arizona.

25.     Plaintiff Nicolas Timmons is, and at all times mentioned herein was, a natural person and citizen of the state of Missouri.

26.     Kristi McDavitt is, and at all times mentioned herein was, a natural person and Citizen of the state of Ohio.

27.     Plaintiff Robert Terwilliger is, and at all times mentioned herein was, a natural person and citizen of the state of Missouri.

28.     Plaintiff Edwin Rodriguez is, and at all times mentioned herein was, a natural person and citizen of the state of Massachusetts.

29.     Defendant Intellihartx, LLC is headquartered and maintains its principal place of business at 129 E. Crawford St., Suite 360, Findlay, Ohio 45840 in Hancock County. Further, Intellihartx, LLL's sole limited liability member, Phillip R. Grower, at all relevant times, is and has been an adult and is a resident and citizen of the state of Ohio.

## III.     <u>JURISDICTION AND VENUE</u>

30.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because Plaintiffs (and many members of the Class) are citizens of states different than ITx.

31.     This Court has personal jurisdiction over ITx because Defendant resides and conducts business in this District.

32.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because ITx resides in this District, a substantial part of the events, acts, and omissions giving rise to Plaintiffs claims occurred in, was directed to, and/or emanated from this District, and Defendant conducts substantial business in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     *ITx's Business*

34.     ITx was founded in 2012 as a healthcare revenue cycle company focused exclusively on healthcare clients including hospitals and physicians' groups. Revenue cycle management is the process of using billing software to track patient care episodes through each stage of interaction between the healthcare service provider and the patient—from registration and appointment scheduling to the final payment of a balance.

35.     According to its own website, "ITx is a leading company in healthcare revenue cycle focused exclusively on healthcare clients[.]"[4] ITx also expressly states that it "serve[s] patients, not debtors."[5]

36.     ITx claims to increase revenue for its clients by providing debt-payment services, including self-pay concierge services and patient open balances services. ITx further explains who it works to serve on its website, stating, "We serve Patients, not Debtors."[6]

37.     ITx utilizes Fortra as its secure file transfer protocol provider.

### B.     *Defendant's Collection of Plaintiffs' and Class Members' Private Information*

38.     As a condition of receiving revenue cycle services, ITx requires that its healthcare clients' patients turn over highly sensitive personal and health information.

---

[4] *See* https://www.itxcompanies.com/what-we-do (last visited on October 25, 2023).
[5] *Id*.
[6] https://www.itxcompanies.com/what-we-do (last visited on October 25, 2023).

39.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, ITx assumed legal and equitable duties owed to them and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

40.     Plaintiffs and Class Members relied on ITx to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendant ultimately failed to do. Defendant owed a duty to Plaintiffs and Class Members to secure their Private Information as such, and ultimately breached that duty.

**C.     *The Data Breach***

41.     On or around February 2, 2023, cybersecurity journalist and expert Brian Krebs reported that Fortra had alerted customers about a "zero-day remote code injection exploit." ITx uses Fortra as its secure file transfer protocol provider—specifically utilizing, at least in part, Fortra's GoAnywhere MFT secure file transfer platform. Krebs noted that Fortra had temporarily implemented a service outage in response and posted the full text of the advisory Fortra sent out to its customer. Remote code injection is a method attackers utilize to execute malicious code over a network. Disclosure of data stored in a platform or on a server is one of the threats of a remote code exploit attack.

42.     On or around February 10, 2023, the Russia-linked ransomware group, CL0P, claimed to be responsible for attacks on GoAnywhere MFT and to have stolen data exposed by the software from over 130 organizations over the course of the preceding ten days.

43.     Over four months after the attack, on June 6, 2023, and June 9, 2023, ITx reported through its Notice to Plaintiffs and Class Members that it was one of the entities impacted, and

that the Private Information of certain patients of its clients, including Plaintiffs' healthcare providers, were exposed by Fortra's attacker.

44.     Through the Data Breach, the unauthorized cybercriminals accessed a cache of highly sensitive Private Information, including medical records, Social Security numbers, past and current medications and health insurance information belonging to Plaintiffs and Class Members.

45.     A ransomware attack is a type of cyberattack that is frequently used to target healthcare providers due to the sensitive patient data they maintain.[7] In a ransomware attack the attackers use software to encrypt data on a compromised network, rendering it unusable and demanding payment to restore control over the network.[8] Ransomware attacks are particularly harmful for patients and healthcare providers alike as they cause operational disruptions that result in lengthier patient stays, delayed procedures or test results, increased complications from surgery, and even increased mortality rates.[9] In 2021, 44% of healthcare providers who experienced a ransomware attack saw their operations disrupted for up to a week and 25% experienced disrupted services for up to a month.[10]

46.     Companies should treat ransomware attacks as any other data breach incident because ransomware attacks don't just hold networks hostage, "ransomware groups sell stolen data in cybercriminal forums and dark web marketplaces for additional revenue."[11]  As cybersecurity

---

[7] Ransomware warning: Now attacks are stealing data as well as encrypting it, available at
https://www.zdnet.com/article/ransomware-warning-now-attacks-are-stealing-data-as-well-as-encrypting-it/
[8] Ransomware FAQs, available at https://www.cisa.gov/stopransomware/ransomware-faqs
[9] Ponemon study finds link between ransomware, increased mortality rate, available at
https://www.healthcareitnews.com/news/ponemon-study-finds-link-between-ransomware-increased-mortality-rate
[10] The State of Ransomware in Healthcare 2022, available at
https://assets.sophos.com/X24WTUEQ/at/4wxp262kpf84t3bxf32wrctm/sophos-state-of-ransomware-healthcare-2022-wp.pdf
[11] *Ransomware: The Data Exfiltration and Double Extortion Trends*, available at
https://www.cisecurity.org/insights/blog/ransomware-the-data-exfiltration-and-double-extortion-trends

expert Emisoft warns, "[a]n absence of evidence of exfiltration should not be construed to be evidence of its absence […] the initial assumption should be that data may have been exfiltrated."

47.     An increasingly prevalent form of ransomware attack is the "encryption+exfiltration" attack in which the attacker encrypts a network and exfiltrates the data contained within.[12]  In 2020, over 50% of ransomware attackers exfiltrated data from a network before encrypting it.[13]  Once the data is exfiltrated from a network, its confidential nature is destroyed and it should be "assume[d] it will be traded to other threat actors, sold, or held for a second/future extortion attempt."[14]  And even where companies pay for the return of data attackers often leak or sell the data regardless because there is no way to verify copies of the data are destroyed.[15]

48.     ITx delivered its Notice to Plaintiffs and Class Members on or around June 6 and June 9, 2023, several months following the Data Breach, alerting them that their highly sensitive Private Information had been exposed.

49.     It took Defendant over four months after the Data Breach to inform Plaintiffs and Class Members of the Data Breach, resulting in Plaintiffs and Class Members suffering harm they otherwise may have been able to avoid had Defendant announced the Data Breach sooner.

50.     ITx's Notice was untimely and woefully deficient, failing to provide basic details concerning the Data Breach, including, but not limited to, how unauthorized parties accessed Fortra's  file transfer application, whether the information was encrypted or otherwise protected, how and when ITx learned of the Data Breach, whether the breach was a system-wide breach,

---

[12]*The chance of data being stolen in a ransomware attack is greater than one in ten*, available at
https://blog.emsisoft.com/en/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/
[13] 2020 Ransomware Marketplace Report, available at https://www.coveware.com/blog/q3-2020-ransomware-marketplace-report
[14] *Id.*
[15] *Id.*

whether servers storing information were accessed, and how many people were affected by the Data Breach.

51.     ITx had obligations created by contract, industry standards, common law, federal and state regulations, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

52.     Plaintiffs and Class Members permitted their healthcare providers to provide their Private Information to ITx with the reasonable expectation and mutual understanding that ITx would comply with its obligations to keep such Private Information confidential and secure from unauthorized access.

53.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

54.     Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

**D.     *The Healthcare Sector is Particularly Susceptible to Data Breaches***

55.     Defendant was on notice that companies in the healthcare industry are susceptible targets for data breaches.

56.     Defendant was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related

systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[16]

57.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting confidential medical information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[17]

58.    The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[18] In 2022, the largest growth in data compromises occurred in the healthcare sector.[19]

59.    The number of U.S. data breaches surpassed 1,000 in 2016, a record high and a forty percent increase in the number of data breaches from the previous year.6 In 2022, 1,802 data compromises were reported that impacted over 422 million victims—marking a 42% increase in the number of victims impacted since 2021.[20] That upward trend continues.

60.    Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total

---

[16] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited on October 25, 2023).

[17] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n. (Oct. 4, 2019), *available at*: https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited on October 25, 2023).

[18] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last visited on October 25, 2023).

[19] Identity Theft Resource Center, *2022 End-of-Yeare Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited on October 25, 2023).

[20] 2022 Annual Data Breach Report, IDENTITY THEFT RES. CTR., https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited October 26, 2023).

cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[21]

61.      Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[22]

62.      Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[23]

63.      As an entity both contracting with healthcare service providers and handling, storing, and safeguarding patients' Private Information, Defendant knew, or reasonably should have known, the importance of safeguarding patients' Private Information entrusted to it, and of the foreseeable consequences if its data security systems were breached. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[21] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited on October 25, 2023).

[22] *Id.*

[23] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks  (last visited on October 25, 2023).

### E.    *ITx Failed to Comply with HIPAA*

64.    Title II of the Health Insurance Portability and Accountability Act ("HIPAA") contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that HHS rules streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

65.    Upon information and belief, because ITx receives, maintains, and handles Private Information from its clients (who are healthcare providers), Defendant qualifies as a business associate within the meaning of 45 C.F.R. § 160.103(3), therefore becoming a custodian of patient PHI.

66.    Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

67.    Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[24] *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

68.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

---

[24] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

69.     HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

70.     HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

71.     The Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from the Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs' and Class Members' PHI.

72.     Plaintiffs' and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

73.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

74.     45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

75.     Plaintiffs' and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

76.     Plaintiffs' and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

77.     Based upon cybersecurity expert Brian Krebs report on the Data, it is reasonably believed that Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

78.     Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

79.     Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

80.     Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

81.     It is reasonable to infer that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

82.     It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

83.     After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future

harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

84. ITx's security failures also include, but are not limited to:

    a.    Failing to maintain adequate data security systems, practices, and protocols to prevent data loss;

    b.    Failing to mitigate the risks of a data breach and loss of data;

    c.    Failing to ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity *or business associate* creates, receives, maintains, or transmits" and "protect against any reasonably anticipated threats or hazards to the security or integrity of such information," in violation of 45 C.F.R. § 164.306 (emphasis added).

    d.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR § 164.306(a)(1);

    e.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR § 164.308(a)(1);

    f.    Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii);

    g.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR § 164.306(a)(2);

     h.     Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR § 164.306(a)(3); and

     i.     Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq.*

85.     HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. See 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

86.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and **in no case later than 60 days** following discovery of the breach."[25]

87.     HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. See 45 C.F.R. § 164.530(e). HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart by the covered entity or its business associate. See 45 C.F.R. § 164.530(f).

---

[25] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added) (last visited October 26, 2023.

88.     Because Defendant failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure Defendant's approach to information security, especially as such approach relates to the supervision of its business associates, vendors, and/or suppliers, is adequate and appropriate going forward. ITx still maintains the PHI and other highly sensitive PII of its current and former client's patients. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class Members' Private Information remains at risk of subsequent data breaches.

### F.     *ITx Failed to Comply with FTC Guidelines*

89.     Private Information is a valuable commodity to cyber attackers. As the Federal Trade Commission ("FTC") recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[26] Indeed, a robust "cyber black market" exists in which criminals openly post stolen Private Information on multiple underground websites, commonly referred to as the dark web.

90.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

---

[26] Eyal Benishti, *How to Safeguard Hospital Data from Email Spoofing Attacks*, CHIEF HEALTHCARE EXEC. (Apr. 4, 2019), https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

91.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

92.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

93.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

94.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

95.     Defendant was at all times fully aware of its obligations to protect the Private Information of its healthcare clients' patients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**G.     *ITx Breached Its Duty to Safeguard Plaintiffs' and Class Members' Private Information***

96.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols (and those of its business associates, vendors, and/or suppliers) adequately protected the Private Information of Class Members.

97.     Defendant breached their obligations to Plaintiffs and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data (and those of its business associates, vendors, and/or suppliers). Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.     Failing to adequately protect Plaintiffs' and Class Members' Private Information;

    b.     Failing to sufficiently train and/or monitor its business associates, vendors, and/or suppliers regarding the proper handling of its clients' patients' Private Information;

    c.     Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

    d.      Failing to adhere to HIPAA and industry standards for cybersecurity, as discussed above; and

    e.      Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

98.    Had Defendant remedied the deficiencies in their information storage and security practices, procedures, and protocols, followed industry guidelines, and adopted data security monitoring, supervision, and other measures recommended by experts in the field, it could have prevented the theft of Plaintiffs' and Class Members' confidential Private Information.

99.    Accordingly, Plaintiffs' and Class Members' lives have been severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face a present and continuing risk of harm that includes, but is not limited to, medical fraud and identity theft.

## H.    *ITx Should Have Known that Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft*

100.    The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[27] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

---

[27] FTC Information Injury Workshop, BE and BCP Staff Perspective, Federal Trade Commission, (October 2018), available at https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on October 25, 2023).

101.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

102.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

103.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

104.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[28]

---

[28] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier

105.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

106.     The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

107.     The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like phone numbers and emails) of Plaintiffs and the other Class Members.

108.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

---

than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-](https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-finn/ (last visited on October 25, 2023).

109.     Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

110.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[29] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

111.     Identity thieves can also use stolen personal information such as Social Security numbers and Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[29] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited April 28, 2023).

112.    In fact, a study by the Identity Theft Resource Center[30] shows the multitude of harms caused by fraudulent use of PII:



113.    PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[31]

114.    Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

115.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[32]

---

[30] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www. creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on October 26, 2023).
[31] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited on October 25, 2023).
[32] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*:
https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited on October 25, 2023).

116. PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

117. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[33]

118. The ramifications of Defendant's failure to keep their clients' patients' Private Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

119. Here, not only was sensitive medical information compromised, but Social Security numbers may have been compromised too. The value of Private Information is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

120. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when

---

[33] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited on October 25, 2023).

it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[34]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

121.    Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

122.    As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

## I.    *Plaintiffs' and Class Members' Suffered Damages*

123.    The ramifications of Defendant's failures to keep Plaintiffs' and Class Members' Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[35]

124.    Plaintiffs and Class Members directly or indirectly entrusted their Private Information to ITx in order to receive healthcare services. Specifically, Plaintiffs entrusted their

---

[34] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited October 25, 2023).
[35] *2014 LexisNexis True Cost of Fraud Study*, LEXISNEXIS (Aug. 2014), https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf.

Private Information to ITx when they received medical services from their healthcare providers, clients of ITx.

125. Plaintiffs' and Class Members' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices, procedures, and protocols, as discussed herein.

126. As a direct and proximate result of Defendant's actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

127. Further, as a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to spend time dealing with the effects of the Data Breach. Specifically, Plaintiffs and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and/or closely reviewing and monitoring bank accounts, credit reports, and explanations of benefits for unauthorized activity for years to come, and spending time sorting through a significant increase in the number of scam and phishing calls, texts, and emails they receive now as a result of the Data Breach.[36] Such increased scam and phishing communications, which began soon after the Data Breach, have caused Plaintiffs to suffer annoyance, harassment, and temporary loss of control over their personal devices.

---

[36] *See Tate v. Eyemed,* 1:21-cv-36 (S.D. Ohio) where the Court found plaintiffs' "needle in the standing haystack" - that after the data breach, they received a significantly increased number of scam and phishing calls, texts, and emails - is enough to establish cognizable injury-in-fact.

128.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

129.    Plaintiffs and Class Members also suffered a loss of value of their Private Information when it was acquired by cybercriminals in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. Indeed, an active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.  In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies. Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.

130.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cyber criminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiffs and the Class Members and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

131.    Plaintiffs and Class Members also face a present and continuing risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class Members.

132.     The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiffs and Class Members, which can also be used to carry out targeted medical fraud and/or identity theft against them.

133.     Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

    a.     Monitoring for and discovering fraudulent charges;

    b.     Canceling and reissuing credit and debit cards;

    c.     Placing "freezes" and "alerts" with credit reporting agencies;

    d.     Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    e.     Contacting financial institutions and closing or modifying financial accounts;

    f.     Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    g.     Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled;

    h.     Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come; and

          i.      Dealing with the increase in spam and phishing emails, text messages, and phone calls resulting from the Data Breach.

134. Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant and its business associates, vendors, and/or suppliers, is protected from future breaches by the implementation of more adequate data security measures and safeguards.

135. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including a present and continuing risk of harm, in the forms set forth above.

<u>Plaintiff Lauren Perrone</u>

136. In addition to the damages discussed herein, Plaintiff Perrone has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Ms. Perrone otherwise would have spent performing other activities, such as her job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff Perrone spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

137. In addition, Plaintiff Perrone has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of her privacy and the release of her Private Information, which she would not have suffered had Defendant implemented the necessary and proper safeguards to protect her and Class Members' Private Information from theft.

138.     Plaintiff Perrone suffered actual injury in the form of damages to and diminution of the value of her Private Information—a form of intangible property that Plaintiff Perrone entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach.

Plaintiff Victoria Evans

139.     In addition to the damages discussed herein, Plaintiff Evans has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Ms. Evans otherwise would have spent performing other activities, such as her job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff Evans spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

140.     In addition, Plaintiff Evans has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of her privacy and the release of her Private Information, which she would not have suffered had Defendant implemented the necessary and proper safeguards to protect her and Class Members' Private Information from theft.

141.     Plaintiff Evans suffered actual injury in the form of damages to and diminution of the value of her Private Information—a form of intangible property that Plaintiff Evans entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach.

Plaintiff Thomas Kelly

142.    In addition to the damages discussed herein, Plaintiff Kelly has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Mr. Kelly otherwise would have spent performing other activities, such as his job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff Kelly spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

143.    In addition, Plaintiff Kelly has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of his privacy and the release of his Private Information, which he would not have suffered had Defendant implemented the necessary and proper safeguards to protect his Plaintiffs' and Class Members' Private Information from theft.

144.    Plaintiff Kelly suffered actual injury in the form of damages to and diminution of the value of Private Information—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach

Plaintiff Jose Cabrales

145.    In addition to the damages discussed herein, Plaintiff Cabrales has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Mr. Cabrales otherwise would have spent performing other activities, such as his job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff Cabrales spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses

by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

146. In addition, Plaintiff Cabrales has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of his privacy and the release of his Private Information, which he would not have suffered had Defendant implemented the necessary and proper safeguards to protect Plaintiffs' and Class Members' Private Information from theft.

147. Plaintiff Cabrales suffered actual injury in the form of damages to and diminution of the value of Private Information—a form of intangible property that Plaintiff Cabrales entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach

Plaintiff Nicolas Timmons

148. In addition to the damages discussed herein, Plaintiff Timmons has also suffered actual injury in the form of: (i) lost time by having to deal with all the consequences of the Data Breach, including reviewing and monitoring his bank accounts and other online accounts and researching the impacts of the Data Breach; (ii) dealing with a wave of scammer telephone calls— often at a frequency of up to eight calls per day; and (iii) handling a wave of fraudulent loan and credit pre-approval mail, all as a result of his Private Information being exposed in the Data Breach. This is time Plaintiff Timmons otherwise would have spent performing other activities or leisurely events for the enjoyment of life. Plaintiff Timmons intends to spend additional time and effort taking steps to protect his Private Information in the future.

149. Moreover, Plaintiff Timmons spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing

your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

150. In addition, Plaintiff Timmons has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of his privacy and the release of his Private Information, which he would not have suffered had Defendant implemented the necessary and proper safeguards to protect his and Class Members' Private Information from theft.

151. Plaintiff Timmons suffered actual injury in the form of damages to and diminution of the value of Private Information—a form of intangible property that Plaintiff Timmons entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach.

Plaintiff Kristi McDavitt

152. In addition to the damages discussed herein, Plaintiff McDavitt has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Ms. McDavitt otherwise would have spent performing other activities, such as her job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff McDavitt spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

153. In addition, Plaintiff McDavitt has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of her privacy and the release of her Private Information, which she would not have suffered had Defendant

implemented the necessary and proper safeguards to protect her and Class Members' Private Information from theft.

154.    Plaintiff McDavitt suffered actual injury in the form of damages to and diminution of the value of her Private Information—a form of intangible property that Plaintiff McDavitt entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach

Plaintiff Robert Terwilliger

155.    In addition to the damages discussed herein, Plaintiff Terwilliger has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Mr. Terwilliger otherwise would have spent performing other activities, such as his job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff Terwilliger spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

156.    In addition, Plaintiff Terwilliger has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of his privacy and the release of his Private Information, which he would not have suffered had Defendant implemented the necessary and proper safeguards to protect Plaintiffs' and Class Members' Private Information from theft.

157.    Plaintiff Terwilliger suffered actual injury in the form of damages to and diminution of the value of his Private Information—a form of intangible property that Plaintiff Terwilliger entrusted to Defendant for the purpose of receiving medical services, which was compromised in,

and as a result, of the Data Breach. Specifically, Plaintiff Terwilliger's credit has received several hard inquiries which he did not request.

Plaintiff Edwin Rodriquez

158.    In addition to the damages discussed herein, Plaintiff Rodriquez has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Mr. Rodriquez otherwise would have spent performing other activities, such as his job and/or leisurely activities for the enjoyment of life. Moreover, Plaintiff Rodriguez spent this time at Defendant ITx's direction. In the Data Breach Notice, ITx encouraged Plaintiffs to spend time mitigating his losses by "reviewing your account statements and monitoring your free credit reports for suspicious activity" and "to remain vigilant against incidents of identity theft and fraud.

159.    In addition, Plaintiff Rodriquez has suffered and will continue to suffer emotional distress as a result of the Data Breach and has increased concerns for the loss of his privacy and the release of his Private Information, which he would not have suffered had Defendant implemented the necessary and proper safeguards to protect Plaintiffs' and Class Members' Private Information from theft.

160.    Plaintiff Rodriquez suffered actual injury in the form of damages to and diminution of the value of his Private Information—a form of intangible property that Plaintiff Rodriquez entrusted to Defendant for the purpose of receiving medical services, which was compromised in, and as a result, of the Data Breach.

V.      **CLASS ACTION ALLEGATIONS**

161.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to rule 23(b)(2), (b)(3), and (c)(4) of the federal Rules of Civil Procedure.

162.    Specifically, Plaintiffs propose the following Nationwide Class and State Subclasses (collectively the "Class" unless otherwise specified), subject to amendment as appropriate:

> **Nationwide Class**
> **All individuals in the United States who were impacted by the Data Breach, including all who were sent a notice of the Data Breach.**

> **New Jersey Subclass**
> **All individuals residing in New Jersey who were impacted by the Data Breach, including all who were sent a notice of the Data Breach**.

> **Ohio Subclass**
> **All individuals residing in Ohio who were impacted by the Data Breach, including all who were sent a notice of the Data Breach**.

> **Arizonia Subclass**
> **All individuals residing in Arizona who were impacted by the Data Breach, including all who were sent a notice of the Data Breach**.

> **Massachusetts Subclass**
> **All individuals residing in Massachusetts who were impacted by the Data Breach, including all who were sent a notice of the Data Breach.** [37]

> **Missouri Subclass**
> **All individuals residing in Missouri who were impacted by the Data Breach, including all who were sent a notice of the Data Breach**

163.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any

---

[37] A Demand Letter was submitted, at the Plaintiff Rodriquez filed his original Petition, to Defendant, notifying it of a claim under the Massachusetts General Laws.

and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

164.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and Subclasses, and to propose alternative or additional Subclasses before the Court determines whether certification is appropriate.

165.    <u>Numerosity</u>. Fed R. Civ. P. 23(a)(1): The Class Members are so numerous that joinder of all members is impracticable. Though the exact identities of Class Members are unknown at this time, based on information and belief, the Class consists of roughly half a million individuals whose Private Information was compromised in the Data Breach.[38] The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

166.    <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant engaged in the conduct alleged herein;

    b.    Whether Defendant's conduct violated the FTCA and/or HIPAA;

    c.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

    d.    When Defendant learned of the vulnerability within its network that led to the Data Breach;

    e.    Whether Defendant's response to the Data Breach was adequate;

---

[38] https://apps.web.maine.gov/online/aeviewer/ME/40/cd6cca3b-8ef7-40fd-8814-d0688c72716a.shtml (last visited July 5, 2023).

f.  Whether Defendant took reasonable steps and measures to safeguard Plaintiffs' and Class Members' Private Information;

g.  Whether Defendant breached its duty to Plaintiffs and Class Members to safeguard their Private Information;

h.  Whether hackers obtained Plaintiffs' and Class Members' Private Information via the Data Breach;

i.  Whether Defendant knew or should have known that its data monitoring and supervision processes were deficient;

j.  Whether Defendant was aware that its business associates', vendors', and/or suppliers' data security practices, procedures, and protocols were inadequate;

k.  What damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct;

l.  Whether Defendant's conduct was negligent;

m.  Whether Defendant was unjustly enriched;

n.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

o.  Whether Plaintiffs and Class Members are entitled to lifetime credit or identity monitoring and monetary relief; and

p.  Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

167. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

168. <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs have no interests antagonistic to members of the Class. In addition, Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

169. <u>Predominance</u>. Fed. R. Civ. P. 23(b)(3): Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' Private Information was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way and as a result of the same negligent acts and omissions committed by Defendant. The common issues arising from Defendant's conduct affecting Plaintiffs and Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

170. <u>Superiority and Manageability</u>. Fed. R. Civ. P. 23(b)(3): A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

171.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

172.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

173.    Injunctive Relief. Fed. R. Civ. P. 23(b)(2): Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

174.    Ascertainability. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI.  CLAIMS FOR RELIEF

<u>COUNT I</u>
**NEGLIGENCE**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

175.     Plaintiffs restate and reallege all of the allegations in paragraph 1 to paragraph 174. as if fully set forth herein.

176.     Plaintiffs and Class Members were required to submit their Private Information in order to receive healthcare services from their healthcare providers (Defendant's clients). Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

177.     Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that the Private Information would be an attractive target for cyberattacks.

178.     Defendant owed a duty of care to Plaintiffs and Class Members who entrusted their Private Information was entrusted to them. Defendant's duties included, but were not limited to, the following:

  a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, supervising, monitoring, and protecting the Private Information in its possession;

  b. To protect client's patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.      To have procedures, including but not limited to monitoring and supervision procedures, in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d.      To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to HIPAA and the FTC;

    e.      To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.      To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

179.    Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

180.    Defendant's duty to use reasonable security measures also arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a mandatory step in receiving services from Defendant (and its healthcare provider clients). While this special relationship exists independent from any contract, it is recognized by Defendant's privacy practices, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered Private Information as part of its business and was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a resulting data breach.

181.    Defendant's duty also arose because Defendant was bound by industry standards to protect its healthcare clients' patients' confidential Private Information.

182.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant and its associates, vendors, and/or suppliers, and Defendant owed Plaintiffs and Class Members a duty of care to not subject them to an unreasonable risk of harm.

183.    Defendant, through its actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within its care.

184.    Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate data security practices to safeguard the Private Information of Plaintiffs and Class Members.

185.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' Private Information. Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and Class Members' Private Information;

b.    Failing to adequately monitor the security of the Private Information;

c.    Allowing unauthorized access to Plaintiffs' and Class Members' Private Information;

d.    Failing to comply with the FTC and FTCA;

e.    Failing to comply with HIPAA; and

    f.     Failing to comply with other state laws and regulations, as further set forth herein.

186.    Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

187.    As a result of Defendant's ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

188.    Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

189.    As a result of Defendant's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

190.    Defendant also had independent duties under state laws that required them to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach.

191.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

192.    The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

193.    Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

194.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security monitoring procedures, conduct periodic audits of those procedures, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE PER SE**
**(ON BEFHALF OF PLAINTIFFS AND THE CLASS)**

195.    Plaintiffs restate and reallege the allegations in paragraph 1 to paragraph 194 as if fully set forth herein.

196.    Pursuant to the FTCA (15 U.S.C. §45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

197.    Pursuant to HIPAA (42 U.S.C. §§1302d, *et seq*.), Defendant had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

198.    Defendant breached its duties to Plaintiffs and Class Members under the FTCA (15 U.S.C. §45) and HIPAA (42 U.S.C. §§1302d, *et seq*.), by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

199.    Plaintiffs and the Class are within the class of persons that the FTCA and HIPAA were intended to protect.

200.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA and HIPAA were intended to guard against.

201.    Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

202. But for Defendant's wrongful and negligent breaches of its duties owed to Plaintiffs and Class Members, Plaintiff and Class Members would not have been injured.

203. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breaches of its duty. Defendant knew or reasonably should have known that it was failing to meet its duties, and that Defendant's breaches would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

204. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

205. Plaintiffs restate and reallege the allegations in paragraph 1 to paragraph 204 as if fully set forth herein.

206. Plaintiffs and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by ITx and was ultimately accessed or compromised in the Data Breach.

207. As a business associate of its, and as a result of its acceptance and storage of the Private Information its clients, ITx has a fiduciary duty to Plaintiffs and Class Members. In light of this fiduciary relationship, ITx must act primarily for the benefit of its clients' patients, which includes safeguarding and protecting Plaintiffs' and Class Members' Private Information, even in the absence of direct privity between them.

208. Because of that fiduciary duty, Plaintiffs and Class Members either directly or indirectly gave Private Information to Defendant in confidence, believing that ITx would protect

that information. Plaintiffs and Class Members were entitled to expect their information would remain confidential while in ITx's possession and Plaintiffs and Class Members would not have directly or indirectly have ITx with this information had they known it would not be adequately protected.

209.  ITx has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship, requiring ITx to exercise the utmost care in safeguarding and protecting Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

210.  Plaintiffs and Class Members did not consent to nor authorize ITx to release or disclose their Private Information to unknown criminal actors. ITx breached its fiduciary duties owed to Plaintiffs and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its patients; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive Private Information.

211.    But for ITx's wrongful breach of its fiduciary duties owed to Plaintiffs and Class Members, their PII and PHI would not have been compromised.

212.    As a direct and proximate result of ITx's breach of its fiduciary duties, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

213.    Plaintiffs restate and reallege the allegations in paragraph 1 to paragraph 212 as if fully set forth herein.

214.    Plaintiffs and Class Members entered into an implied contract with Defendant when they obtained services from healthcare providers, in exchange for which they were required to provide their Private Information. The Private Information provided by Plaintiffs and Class Members to Defendant was governed by and subject to Defendant's privacy duties and policies.

215.    Through Defendant's offering of revenue cycle management services to healthcare providers, it knew or should have known that it needed to protect Plaintiffs' and Class Members' confidential Private Information in accordance with Defendant's policies, practices, and applicable state and federal law.

216.    As consideration, Plaintiffs and Class Members turned over valuable Private Information to Defendant and made payments, directly or indirectly, to Defendant in exchange for access to its services. Accordingly, Plaintiffs and Class Members bargained with Defendant to securely maintain and store their Private Information.

217.   Absent Defendant's promise to reasonably safeguard their personal information, Plaintiffs and Class Members would not have used Defendant's services or would not have allowed Defendant to maintain their data.

218.   Defendant accepted possession of Plaintiffs; and Class Members' Private Information for the purpose of providing services to Plaintiffs and Class Members.

219.   In delivering their Private Information to Defendant in exchange for offering healthcare services, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard the Private Information as part of those services.

220.   Defendant agreed to safeguard and protect the Private Information of Plaintiffs and Class Members and to timely and accurately notify Plaintiff and Class Members in the event that their Private Information was breached or otherwise compromised.

221.   Defendant's implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information, including its business associates, vendors, and/or suppliers, also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its business associates, vendors, and/or suppliers is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees, business associates, vendors, and/or suppliers; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class Members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

222.     Plaintiffs and Class Members entered into the implied contracts with the reasonable expectation that Defendant's data security practices and policies were reasonable and consistent with industry standards. Plaintiff and Class Members believed that Defendant would use part of the monies paid to Defendant under the implied contracts to fund adequate and reasonable data security practices.

223.     Had Defendant disclosed to Plaintiffs and the Class that it did not have adequate data security and data supervisory practices to ensure the security of their sensitive data, Plaintiffs and Class Members would not have provided their Private Information to Defendant.

224.     As a provider of revenue cycle management services to healthcare providers, Defendant recognized (or should have recognized) that Plaintiffs' and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the Class.

225.     Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information. Defendant further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

226.     Additionally, Defendant breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information they created, received, maintained, and transmitted, in violation of 45 CFR § 164.306(a)(1).

227.     Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR § 164.308(a)(1).

228.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii).

229.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

230.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR § 164.306(a)(3).

231.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce violations, in violation of 45 CFR § 164.306(a)(94).

232.    Defendant further breached the implied contracts with Plaintiffs and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq*.

233.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR § 164.530(c).

234.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality, integrity, and availability of all electronic

protected health information its business associate(s) "create, receive, maintain, or transmit" and "protect against any reasonably anticipated threats or hazards to the security or integrity of such information," in violation of 45 C.F.R. § 164.306 (emphasis added).

235.    Defendant further breached the implied contracts with Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

236.    A meeting of the minds occurred, as Plaintiffs and Class Members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendant in exchange for Defendant's agreement to, *inter alia*, protect their Private Information.

237.    Plaintiffs and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## COUNT V
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

238.    Plaintiffs restate and reallege the allegations in paragraph in paragraph 1 to paragraph 237 as if fully set forth herein.

239.    This Count is pleaded in the alternative to Count IV above.

240.    Upon information and belief, ITx entered into virtually identical contracts with its healthcare clients, including Plaintiffs' healthcare providers, to provide revenue cycle management services to them, which services included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to it.

241.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendant agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiff and

the Class was the direct and primary objective of the contracting parties and Plaintiff and Class Members were direct and express beneficiaries of such contracts.

242.    Defendant knew that if it were to breach these contracts with its clients, Plaintiffs and the Class, would be harmed.

243.    Defendant breached its contracts with its clients and, as a result, Plaintiffs and Class Members were affected by this Data Breach when Defendant failed to use reasonable data security and/or business associate monitoring measures that could have prevented the Data Breach.

244.    As foreseen, Plaintiffs and the Class were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in its care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

245.    Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

**COUNT VI**
**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

246.    Plaintiffs restate and reallege the allegations in paragraph 1 to paragraph 245 as if fully set forth herein.

247.    This Count is pleaded in the alternative to Counts IV and V above.

248.    Plaintiffs and Class Members conferred a benefit on Defendant. Specifically, they provided Defendant with their Private Information, which Private Information has inherent value. In exchange, Plaintiffs and Class Members should have been entitled to Defendant's adequate protection and supervision of their Private Information, especially in light of their special relationship.

249.     Defendant knew that Plaintiffs and Class Members conferred a benefit upon it and have accepted and retained that benefit by accepting and retaining the Private Information entrusted to them. Defendant profited from Plaintiffs' retained data and used Plaintiffs' and Class Members' Private Information for business purposes.

250.     Defendant failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their Private Information provided.

251.     Defendant acquired Plaintiffs' and Class Members' Private Information through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

252.     If Plaintiffs and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have made alternative choices that excluded Defendant.

253.     Plaintiffs and Class Members have no adequate remedy at law.

254.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon it.

255.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) the imminent and substantial risk of actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual

and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

256.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

257.    Plaintiffs and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### COUNT VII
### BREACH OF CONFIDENCE
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

258.    Plaintiffs restate and reallege the allegations in in paragraph 1 to paragraph 257 as if fully set forth herein.

259.    Plaintiffs and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and ultimately accessed and acquired in the Data Breach.

260.     As a provider of revenue cycle services focused on serving the healthcare industry, Defendant has a special relationship with the patients of its clients, including Plaintiffs and Class Members. Because of that special relationship, Defendant was provided with and stored Plaintiffs' and Class Members' Private Information and had a duty to ensure that such was maintained in confidence.

261.     Patients like Plaintiffs and Class Members have a privacy interest in personal, medical and other matters, and Defendant had a duty not to permit the disclosure of such matters concerning Plaintiffs and Class Members.

262.     As a result of the parties' special relationship, Defendant had possession and knowledge of highly sensitive and confidential Private Information belonging to Plaintiffs and Class Members, information that was not generally known.

263.     Plaintiffs and Class Members did not consent nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

264.     Defendant breached their duty of confidence owed to Plaintiffs and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class Members' Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (d) failing to follow its own privacy policies and practices published to clients; and (e) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class Members' Private Information to a criminal third party.

265.     But for Defendant's wrongful breach of its duty of confidence owed to Plaintiff and Class Members, their Private Information would not have been compromised.

266.     As a direct and proximate result of Defendant's wrongful breach of its duty of confidence, Plaintiffs and Class Members have suffered and will continue to suffer the injuries alleged herein.

267.     It would be inequitable for Defendant to retain the benefit of controlling and maintaining Plaintiffs' and Class Members' Private Information at the expense of Plaintiffs and Class Members.

268.     Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**COUNT VIII**
**INVASION OF PRIVACY – INTRUSION UPON SECLUSION**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

269.     Plaintiffs restate and reallege the allegations in paragraph 1 to paragraph 268 as if fully set forth herein.

270.     Plaintiffs and Class Members have a legally protected privacy interest in their Private Information, which is and was collected, stored, and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their Private Information against foreseeable unauthorized access, as occurred with the Data Breach.

271.     Plaintiffs and Class Members reasonably expected that Defendant would protect and secure their Private Information from unauthorized parties and that their Private Information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

272.     Defendant intentionally intruded into Plaintiffs' and Class Members' seclusion by disclosing without permission their Private Information to a third party. Defendant's acts and omissions giving rise to the Data Breach were intentional in that the decisions to implement lax security and failure to timely notice Plaintiffs and the Class were undertaking willfully and intentionally.

273.     By failing to keep Plaintiffs' and Class Members' Private Information secure, and disclosing Private Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiffs' and Class Members' privacy right to seclusion by, inter alia:

   a.   intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

   b.   invading their privacy by improperly using their Private Information obtained for a specific purpose for another purpose, or disclosing it to unauthorized persons;

   c.   failing to adequately secure their Private Information from disclosure to unauthorized persons; and

   d.   enabling the disclosure of their Private Information without consent.

274.     This invasion of privacy resulted from Defendant's intentional failure to properly secure and maintain Plaintiffs' and Class Members' Private Information, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded and private data.

275.     Plaintiffs' and Class Members' Private Information is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiffs' and Class Members' Private Information, and such information is otherwise protected from exposure to the public by various statutes, regulations, and other laws.

276. The disclosure of Plaintiffs' and Class Members' Private Information to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

277. Defendant's willful and reckless conduct that permitted unauthorized access, exfiltration and disclosure of Plaintiffs' and Class Members' sensitive Private Information is such that it would cause serious mental injury, shame, or humiliation to people of ordinary sensibilities.

278. The unauthorized access, exfiltration, and disclosure of Plaintiffs' and Class Members' Private Information was without their consent, and in violation of various statutes, regulations, and other laws. As a direct and proximate result of Defendant's intrusion upon seclusion, Plaintiffs and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

**COUNT IX**
**INJUNCTIVE/DECLARATORY RELIEF**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

279. Plaintiffs restate and reallege the allegations in paragraph 1 to paragraph 278 as if fully set forth herein.

280. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

281. Defendant owed a duty of care to Plaintiffs and Class Members, which required them to adequately monitor and safeguard Plaintiffs' and Class Members' Private Information.

282. Defendant and its associates, vendors, and/or suppliers still possess the Private Information belonging to Plaintiffs and Class Members.

283.     Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs and Class Members continue to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of their Private Information will occur in the future.

284.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.  Defendant owes a legal duty to secure its healthcare clients' patients' Private Information under the common law, HIPAA, and FTC guidelines;

      b.  Defendant's existing data security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable data security procedures and practices that are appropriate to protect patients' Private Information; and

      c.  Defendant continues to breach this legal duty by failing to employ reasonable measures to secure its clients' patients' Private Information.

285.     This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect patients' Private Information, including the following:

      a.  Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members; and

      b.  Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i.      engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.      engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.      auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.      segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.      conducting regular database scanning and security checks;

vi.      routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii.      meaningfully educating its clients and its clients' patients about the threats they face with regard to the security of their Private Information, as well as the steps that should be taken to protect themselves.

286.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury and will lack an adequate legal remedy if another data breach in Defendant's systems occur. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant

occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

287.    The hardship to Plaintiffs and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiffs and Class Members will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

288.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus preventing future injury to Plaintiffs and other patients whose Private Information would be further compromised.

## COUNT X
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") (ON BEHALF OF PLAINTIFFS TERWILLIGER, TIMMONS AND THE MO. SUBCLASS)

289.    Plaintiffs Terwilliger, Timmons, and Evans (collectively "Missouri Plaintiffs") restate and reallege the allegations in paragraph 1 to paragraph 288 as if fully set forth herein.

290.    Missouri Plaintiffs bring this Count individually on behalf of themselves and on behalf of the MO Subclass.

291.    Defendant is a "person" within the meaning of the MMPA (Mo. Rev. Stat. §407.010(5)).

292.    Defendant engaged in a "trade" or "commerce" within the meaning of the MMPA with regard to the advertisement and offers of sales for services which are supposed to keep the Missouri Plaintiffs' and the MO Subclass Members' Private Information safe and secure.

293.    Defendant engaged in unlawful practices and deceptive conduct in the course of its business that violated the MMPA including misrepresentations and omissions related to the safety and security of the Missouri Plaintiffs' and the MO. Subclass Members' Private Information, all in violation of Mo. Rev. Stat. §407.020.1.

294.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices. These acts and conduct include, but are not limited to, Defendant misrepresentations and deceptive claims that it maintained adequate security measures to protect and keep safe the Missouri Plaintiffs' and the MO. Subclass Members' Private Information.

295.    Defendant's unlawful conduct also included omitting material facts, such as failing to disclose its:

a.    Inadequate data security systems, practices, and protocols to prevent data loss;

b.    Failure to mitigate the risks of a data breach and loss of data;

c.    Failure to ensure the confidentiality, integrity, and availability of all electronic protected health information;

d.    Failure to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits.

e.    Failure to implement policies and procedures to prevent, detect, contain, and correct security violations;

f.    Failure to mitigate, to the extent practicable, harmful effects of security incidents that are known;

g.    Failure to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic Private Information;

h.     Failure to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information;

296.    Defendant's misrepresentations and omission were material to consumers and made in order to induce consumers' reliance regarding the safety and security of their Private Information in order to receive healthcare services.

297.    Defendant's deceptive practices misled the Missouri Plaintiffs and members of the MO Subclass and would cause a reasonable person to enter into the transactions that resulted in damages and did in fact cause reasonable persons to enter into the transactions, including the Missouri Plaintiffs and members of the MO Subclass.

298.    As a direct and proximate cause of Defendant's deceptive practices and unlawful conduct, the Missouri Plaintiffs and members of the MO Subclass have suffered, and continue to suffer, an ascertainable loss of money and economic injuries.

299.    For violations of the MMPA, Missouri Plaintiffs on behalf of themselves and the members of the MO Subclass, seek to recover actual damages sustained; punitive damages; o recover reasonable attorneys' fees and costs; and any other equitable relief as the Court deems necessary or proper to protect Missouri Plaintiffs and members of the MO Subclass from Defendant's deceptive conduct and any other statutorily available damages or relief the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class and State Subclasses as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiffs are a proper representatives of the Class requested herein;

b. An order finding in favor of Plaintiffs and Class Members on all counts asserted herein,

c. Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

d. An order providing injunctive and declaratory and other equitable relief as necessary to protect the interests of the Class as requested herein;

e. An order awarding Plaintiffs and Class Members a sum of money to purchase a lifetime of credit monitoring and identity theft insurance;

f. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

g. A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h. An award of such other and further relief as this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a trial by jury on all triable issues.

Dated: October 27, 2023

Respectfully submitted,

*/s/ Mason A. Barney*
Mason A Barney
Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
Telephone: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com

*/s/ Christopher Wiest*
Christohper Wiest
**Chris Wiest, Atty at Law, PLLC**
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
P: 513/257-1895 F: 859/495-0803
E: chris@cwiestlaw.com

*/s/ Gary Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
P: (866) 252-0878
E: gklinger@milberg.com

*/s/ William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
P: 405-235-1560 F: 405-239-2112
E:wbf@federmanlaw.com

*/s/ John A. Yanchunis*
John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
P: (813) 223-5505
E: jyanchunis@ForThePeople.com

*/s/ Patrick T. Egan* _____

Patrick T. Egan
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
E: pegan@bermantabacco.com

*/s/ Gary F. Lynch* _____

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
P (412) 322-9243 P: (412) 231-0246
gary@lcllp.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 27, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Mason A. Barney*
Mason A. Barney